We'll hear argument next in Case 20-1143, Badgerow v. Walters. Mr. Geiser. Thank you, Mr. Chief Justice, and may it please the Court. The question presented is whether Vaden's look-through approach applies to applications to enforce or vacate an arbitration award under Sections 9 and 10 of the Federal Arbitration Act. The answers controlled by the FAA's plaintext and the competing statutory arguments are not close. The look-through approach is no ordinary jurisdictional doctrine. It is an express, textual departure from the well-pleaded complaint rule. This textual exception is found solely in Section 4. It applies exclusively to petitions under that single section. Congress did not repeat this unique language anywhere else in the Act. In fact, there is not a single textual hint in any other section that a look-through analysis is allowed or appropriate. Yet according to Respondents, the look-through approach somehow applies to every section of the FAA instead of the single section where it actually appears. Respondents' theory fails on every conceivable level. For over a century now, the well-pleaded complaint rule has governed the exercise of jurisdiction in Federal courts. That's the rule that applies unless Congress says otherwise. And Congress said otherwise in Section 4 alone. Congress did not isolate the look-through clause in Section 4 because it wanted it applied in other sections where it was excluded. Nor did Congress endorse Respondents' notion of an upside-down default rule where courts ignore the face of the well-pleaded filing and instead look to a nonexistent phantom pleading that never appears in any court. Respondents' theory would require overturning bedrock jurisdictional doctrine and abandoning this Court's fidelity to the statutory text. There is simply no basis for saying the look-through approach applies in Sections 9 and 10 without judicially rewriting the statute or rendering Section 4's express look-through clause wholly superfluous. I welcome the Court's questions. JUSTICE KENNEDY. Counsel, we have said or suggested from time to time that the FAA doesn't provide Federal question jurisdiction. So how do you square that with the notion that Section 4 or Section 8 provides such jurisdiction? MR. CLEMENT. Well, I think the best reading of this Court's cases is it was referring generally to the idea that when an action arises under Federal law, then the Federal law itself provides jurisdiction. The Court wasn't parsing the individual sections of the Act and saying whether there's a specific independent grant of jurisdiction. But ultimately, I don't think it matters because there are only two ways to read Section 4. We read Section 4 as providing jurisdiction, but the alternative is to read Section 4 as providing an instruction to courts on how to exercise jurisdiction under sections like 1331 and 1332. And that instruction says you can look through to the underlying dispute. Now, that's the departure from the well-pleaded complaint rule that traditionally governs every other filing in the Act. And that exception, that express instruction to depart from that traditional rule, is found only in Section 4. So even if jurisdiction is ultimately deemed to vest under 1331 per Section 4's instruction, which is basically what this Court said in Vaden, you come out to the same – it comes out to the same outcome. Whether you adopt that approach, you say Section 4 itself is an independent grant of jurisdiction. JUSTICE ALITOE-CORTEZ. Well, isn't that an odd statute that you just have one provision in a long statute that grants jurisdiction in sort of a roundabout way? MR. CLEMENT. Well, I think that the Federal Arbitration Act is deemed slightly anomalous, but I think what's absolutely clear from the FAA is that the only basis for departing from the well-pleaded complaint rule is, in fact, in Section 4. If Congress wanted that rule to apply to every section of the Act, it could have put it in a freestanding provision that applied globally, just like it did with Section 6 in saying that applications or petitions on the Act are treated as motions, or as it did in the international arbitration context under Section 203. Nothing stopped Congress from saying, for every pleading under the Federal Arbitration Act, you should look through to the underlying hypothetical nonexistent dispute and decide whether that would give rise to Federal jurisdiction. That's exactly opposite the way that courts have functioned in determining Federal jurisdiction on the face of the pleading for over a century. JUSTICE ALITOE-CORTEZ. Thank you. And, Mr. Gosar, when you say the well-pleaded complaint rule, and that's the alternative, what does the well-pleaded complaint rule indicate in this case? I mean, you say the well-pleaded complaint rule tells you this is the enforcement of a State law contract claim, so we're in State court. But I might say, well, if we look to the well-pleaded complaint, the well-pleaded complaint says something about Section 9, and this arises under Federal law. MR. GOSAR. Sure, Your Honor. Well, I think that what's before the Court, and just to be very clear, is not the underlying dispute. It is clearly the attempt to enforce the arbitration contract. Now, when you're enforcing the arbitration contract, it's true, you're looking to elements of Federal law. But that's exactly what this Court has said now for approaching four decades. It's not the other way around. KAGAN. Well, I guess what I'm saying is that the attempt to enforce the contract is through Section 9. And so why doesn't Section 9 on the well-pleaded complaint rule put you in Federal court? MR. GOSAR. It typically would, Your Honor, except for the fact that for nearly four decades this Court said it doesn't. This Court said that the Federal Arbitration Act is an anomaly and that it normally – unlike the normal situation where that would give a rising under jurisdiction, the Federal Arbitration Act departs from that tradition. And I think it does so. KAGAN. So it's a little bit of an odd argument that you're making, right? Because you're saying, well, it's got to be the well-pleaded complaint rule. But then you're also saying the well-pleaded complaint rule, by virtue of one of our holdings, actually does not function in the way the well-pleaded complaint rule normally does. MR. GOSAR. Well, I think two responses, Your Honor. First, one thing that's very clear is that we can, I think, all agree that there's no license under the text of the statute or the well-pleaded complaint rule to look through to the underlying dispute. You do look at what's actually before the court. So then the question is, should the court overturn nearly four decades of this Court's precedent, saying that even though the party is enforcing an element of the Federal Arbitration Act to enforce an arbitration contract, that that's not enough to get into Federal court? And I would suggest that the Respondents have not asked this Court to reconsider that line of authority. I think it would be striking to reverse it. And just to imagine the practical consequences of doing so. If, in fact, it's enough to get into Federal court to simply invoke an element of the Federal Arbitration Act, then every single contract governed by the FAA is eligible for Federal jurisdiction. Even the most mundane state law disputes between nondiverse parties, every single one of those would come to Federal court. That's not their argument, though. That isn't their argument. But their argument, I think — Their argument, I think, is that the look-through applies to at least some proceedings under the Act, that we've repeatedly said that the Act doesn't affect jurisdiction, however. And therefore, you put those two things together, that look-through must apply to all of the FAA proceedings. And anomalous as it is, there are — Julius Cohen and the ABA interpreted this Act back in the 1920s as doing this anomalous look-through. And correct me if I'm wrong, but I've read those. Well, I disagree that that's what Julius Cohen was saying. Now, granted, that isn't even legislative history. It's actually a post-enactment article. No, but it's getting at what was the understanding of how the Act operated by people who were expert in the field at the time, because otherwise this seems pretty anomalous. But when you realize, well, the experts at the time thought this is how it works, it defeats the idea of how anomalous it is. So it's a look-through all the way through. And I just don't know how you get around our repeated statements that the Act does not confer jurisdiction or affect jurisdiction, as Justice Thomas said. Because if you take that as a given, then Section 4 can't do that either. Well, a couple points there, Your Honor. First, I don't think that Julius Cohen even was saying that the look-through approach applies to everything. He's saying you can apply the look-through approach to enforce arbitration agreements, which in fact is a reference to Section 4. So I don't read the legislative, the non-legislative history, the post-enactment commentary by a single person as actually saying that the look-through approach atextually applies to every single provision of the Act, even though Congress was very deliberate in putting it only in Section 4. And saying not only that, it wasn't even a freestanding sentence in Section 4. The look-through approach is intertwined directly with a motion to compel arbitration. And this Court in Vaden understood that to instruct courts to depart from the well-pleaded complaint rule for Section 4 alone and to decide whether then jurisdiction would vest under Section 1331 or 1332. So, again, even if you disagree with our reading that Section 4, in fact, is an independent grant of jurisdiction, I think at the very least it's instructing courts how to act. Isn't that the end? Sorry to interrupt, but isn't that the end of your case if we disagree with that? Oh, not at all, Your Honor. Okay. Keep going then. Not at all, because the alternative is then jurisdiction. We know from this Court's case law that jurisdiction has to independently arise from somewhere. That somewhere is Section 1331 or 1332 typically, unless it's an admiralty case, which are pretty easy under the Act. But under 1331 and 1332, as Vaden also confirmed, the well-pleaded complaint rule applies. So if you look to the face of the filing, it is not an attempt to adjudicate the underlying dispute. The only reason that you depart from that, and this is why Vaden said this text of Section 4 drives our conclusion, is because Section 4 itself instructs courts to depart from a well-pleaded complaint for purposes of compelling arbitration. It does not say that in Section 9. It doesn't say that in Section 10. Congress is well aware how to tell courts to retain jurisdiction on the back end if they want. That's, in fact, exactly what they did in Section 8. When they're dealing with maritime cases, they said you can exercise jurisdiction to compel arbitration, and you can retain jurisdiction on the back end. That's a very odd command if Congress was assuming that the look-through approach simply applies across the board. Kagan. So on your theory, when would Section 9 and 10 give Federal courts jurisdiction? Is it only in diversity cases? It's predominantly in diversity cases. And I think, again, if you ---- But isn't that a little bit backwards, that it ends up that you put the diversity cases in the Federal court system, and you take all the cases that involve Federal questions and say, oh, the Federal courts don't have anything to do with those  cases? Not at all, Your Honor, because think about first going back to 1925. We were predominantly dealing with commercial contracts. If you want to talk about what Julius Cohen was thinking, he was thinking diversity cases and maritime cases. It wasn't even clear that Federal statutory cases were subject to the FAA for decades. So I think if you ---- the drafters weren't thinking of Federal questions. But also, look at the nature of the action under Section 9 and Section 10. It's not an attempt to re-adjudicate the underlying Federal suit. In fact, that would stand the Federal Arbitration Act on its head. That would make arbitration a prelude to the real event in court where you'll re-adjudicate all these Federal questions. Section 9 is a ministerial function of confirming the award. You don't even need to know generally what the underlying dispute was about, whether it's a Federal question or otherwise. Section 10, as the Court said in Hall Street, was designed to check egregious departures from the arbitration contract. You would send those to State court? I would, just as ---- And is it clear? I think it's not clear that State courts would apply Section 10. I think some State courts apply Section 10 nominally. Others don't. So we're going to have a whole collateral thing of do the State courts have to apply Section 10 or what other standards do they apply? And this Court in Hall Street said that's perfectly fine. In fact, in Hall Street and in Vade in itself, it reminded litigants that State courts in fact play a prominent role in enforcing the Act. And in large part, the Act is left to enforcement in the State courts. And Hall Street confirmed that most State courts apply standards that either are Section 10, they either apply the FAA directly, or they apply a State law standard that is a functional equivalent to it. I'm just missing this. I've had trouble with it. Why would they have jurisdiction in diversity cases but not have jurisdiction in Federal question cases? I think the idea, Your Honor, is that if you have nondiverse parties that are trying to vacate an award above the threshold amount, they can get into Federal court. And we agree with that. That's the well-pleaded complaint rule. But in a Federal question case, the pleading before the Court under Section 9 and Section 10 is not the underlying case. It's the attempt to enforce the arbitration contract. It's saying I want the arbitration contract enforced, not I want to adjudicate the Federal question in the underlying case. And the odd thing is that I — we have Vaden. And so in the Federal question area, at least, sure, you can come in. The parties are having an argument. The argument's about the Federal question. They're having a big argument. They said we got arbitration. It's an antitrust problem or it's an employment problem. And Vaden says, yeah, go ahead. They won't go. Go get an injunction. Now, to me, it doesn't seem to make very much sense to say, okay, go there. Get an injunction. Hey, but when it comes time to enforce it, you can't go there. When it comes time to issue a subpoena, you can't go there. When it comes — and, you know, that's just why you separate four from the rest of it. I can't get it. I understand there's a little bit of different language. There is. But you also could use the word such agreement as being the key to this, and they're talking about such agreement, and such agreement means the agreement we're talking about, which is the Section 4 agreement, which could get there. And if that's the one we're talking about, you can do these other things, too. Okay. Maybe I didn't say it exactly right, but you get the point. I get the point, and you said it very well. First, I'd say that there is radically different language between Section 4 and the other sections. It's a say-disagreement. It's not. But I think there are other reasons not to do that. First, Congress clearly framed these different provisions as stand-alone provisions. There's no requirement that a party invoke Section 4 on the front end. They can only invoke Section 9 or 10 on the back end. That's what happened in this case. The provisions are framed as stand-alone petitions or applications. Most of them have their own service requirements. They have their own statute of limitations, their own venue rules, their own even jurisdictional requirements in Section 4 and Section 8. This is not Congress thinking that you start at the beginning with Section 4 and a single court supervises it all the way through. In fact, you can have different Federal courts enforcing different provisions of this Act. So this is clearly not a continuum. This isn't Congress thinking we need jurisdiction from the start. And that's the main argument. What we're doing here normally is we are having, let's call him an arbitration rat. There is the guy who loves arbitration, and then there is the rat who hates it, although he agreed to it. Okay? Now, he will express his ratitude in many different ways. First, he will not want to go in in the first place. Then if you make him go in in the first place, he's not going to want the other guy to get any witnesses. And then if you go and get that, he's not going to want anybody to enforce this thing, which he lost in the third place. So of course these don't all just always follow. It depends on which of these provisions the guy can use and invoke in order to stop what he agreed to, which is the arbitration. A few answers, Your Honor. First, when a Federal court compels arbitration or stays, the case on the front end, it is discretion where it sees the arbitration rat, the person who is going to fight tooth and nail, to retain jurisdiction over the case. And it can exercise the other authority under the Act as an ancillary matter, which is exactly how it normally works in the settlement context. You can have a Federal claim, and it can be settled, and a court can retain jurisdiction over the case to supervise the settlement or put the settlement in the decree. And you can have situations, then, where the same settlement dispute will either be subject to Federal jurisdiction or not, entirely based on whether the court exercises discretion to do that. And there's nothing wrong with that. This Court said in Vaden that Federal jurisdiction often turns on how litigation unfolds. And you can have different situations. And where Congress wanted a single court to retain jurisdiction, whether it's because of an arbitration rat or not, it said it expressly. Look at Section 8. Section 8 says that the Court has jurisdiction to compel arbitration in the maritime context, and it retains jurisdiction to enforce the award. Congress did not repeat that language in Section 9 or in Section 10. Roberts. So you could call them an arbitration rat or a judicial lion, I suppose. But, I mean, isn't the problem here, and I think your friend will have the exact flip side of the problem, the somewhat unusual situation where this is a Federal statute that we have said does not give rise to Federal jurisdiction. I mean, that's why it seems to me that it's so difficult to parse exactly where you're going to be in Federal court and when you're going to be in State court. I do think that that is an element of what's going on. But given that as a premise, the question then is can you graft the look-through clause, which absolutely clearly applies in Section 4 and only Section 4, onto these other sections. Now, I think the reason you haven't heard my friend say that the Court should reconsider that line of authority is because she's perfectly aware of what would happen if you were. Just to give an example, for the 12-month period that ended in March of 2020, there were 332,000 civil filings in U.S. District Courts nationwide. So far this year in the AAA alone, they've adjudicated 380,000 arbitrations. And if you're to say that simply invoking any provision of the Act is enough, then what you have is anyone with a State law claim in nondiverse parties, now these 380,000 cases are all eligible for Federal jurisdiction. That's not their argument. That's an amicus argument. That's not their argument. It isn't their argument, but their argument is now what's their argument. So I guess of what relevance are those statistics, unless we're thinking of adopting the amicus position? Well, I certainly hope you're not. I was just trying to respond to the Chief Justice's question. But I do think, though, what you look at my friend trying to do then is thinking, well, we know it's not acceptable to say that everything comes in. So now we need to artificially limit it to a subset of cases. But that's the problem. This is an artificial limit. It's very clear that the Section 4 language simply does not apply in those other sections. And if the Court is to say that the one ---- But wouldn't you, to pick up on Justice Breyer's questions, doesn't it make sense to have a uniform rule if you're not going to have, oh, the Act itself confers jurisdiction, a uniform way to think about jurisdiction? The uniform way that I understood has always been thought about was you look through to the underlying controversy. It's pretty simple. And you do that kind of all the way through. Not that that's easy in every case, but at least that's the rule. And you don't get into these state court questions about does Section 10 apply in state courts, which I think is very tricky. Anyway. Well, first, Your Honor, you're going to get the question whether Section 10 applies under any reading because you have the state law case with the non-diverse parties. So that's inevitable. This case is not, for better or worse, the last Federal Arbitration Act case the Court is going to see. But I also think, though, again, looking at it, it is not a uniform approach. This is an express textual departure. And I know Your Honor said the usual way is to look through. No, that's the opposite. The usual way is you look at the face of the pleading. And what parties are seeking to bring before the Court, whether under Section 4, Section 9, or Section 10, is not the underlying dispute. They're trying to adjudicate a specific performance right to the arbitration contract. One other textual point. They emphasize that Section 4 should be read as a venue provision. Can you address that? Sure. I think the easiest way to address that, Your Honor, is that it's directly at odds with Vaden. In Vaden, all nine members of the Court looked at Section 4. It was framed as a jurisdictional provision by all nine members of the Court. The word venue doesn't appear in either the majority opinion or the dissenting opinion. I think it's inconceivable that all nine members of the Court simply overlooked that they were unwittingly considering a venue provision. And I think the reason they didn't overlook anything is because Section 4 is phrased in jurisdictional terms. It doesn't look anything like a normal venue provision. My friend says that there are actually two venue provisions in Section 4, and they contradict each other. The only case law support they have that Section 4 has anything to do with venue is a Seventh Circuit case that wasn't focused on the look-through clause. It was focused on a different sentence, four sentences after it, that is completely unrelated to the look-through provision, and in fact said the look-through provision does not provide venue. So it is truly – it's a very inventive theory, and my friend, who is a very able lawyer, came up with it because they realized that if they don't give the look-through clause some meaning in Section 4, and if the default is, as they say, that you always look through, then that clause becomes entirely superfluous. It serves no purpose. Breyer. I still have the same – were you finished? Yes, yes. I still have the same basic problem, if you want to add something to it. Arbitration goes on all over the world. Okay, there are arbitrators. They decide the case. And here is a fairly simple rule, finally. We need to go to a judge to get him into arbitration, and we're going to need a judge to enforce it. All right. So now we know which judges. It's the Federal judges who will be primarily concerned with enforcing those disputes that are related to Federal law. And that might be a lot of them. Now, there will be State judges involved in this, too, but they're going to be involved primarily in State law, which they know. All right. And we're supposed to know the Federal. And there are the – we seem to come closer to this more unifying, simple system if – simpler – if you're wrong, unfortunately for you. And that's the notion that I'm asking you so you can disabuse me of it. All right. Well, let me try. First, for international arbitration, there actually is jurisdiction, because Congress said so. In Section 203, for anything under the Convention, there's jurisdiction throughout the Act. Now, Congress didn't say that for domestic arbitration. So, again, Congress can decide that a single jurisdictional test, the Section 4 test, in fact, should be written into every other section. But that's Congress's decision to make. It's not this Court's. And I'd also say, too, that the test that we're advocating is the same well-pleaded complaint test that's applied for over a century in all kinds of disputes, including settlements. And look at the settlement of a Federal claim. No one thinks there's any problem with saying a Federal claim is filed in Federal court, it's settled and dismissed, and then a dispute about the settlement goes to State court. And here, there's no Federal expertise in reviewing these arbitration awards. Think about appointing an arbitrator. That's simply reading a contractual provision and deciding what it says about which arbitrator to appoint. It's seeking specific performance of an arbitration procedure. State courts do that all the time. They're very good at that. And the narrow provisions under Section 10 for reviewing an arbitration award, this is not re-adjudicating the Federal question. They shouldn't be doing that. That's treating court review, again, as a do-over of the arbitration, which would frustrate the entire point of sending these cases to arbitration in the first place. This is a very narrow check to make sure there weren't things like fraud or bribery that distorted the arbitration process. That's something that State courts, again, they do all the time. They do it with the absolute flood of cases that involve State law issues and nondiverse parties. And there's no need to clog the Federal court's judicial bandwidth with deciding what are effectively ministerial actions or fairly mundane actions that do not involve re-adjudicating the Federal suit. The well-pleaded complaint rule governs just fine. And it is fairly simple. And the alternative will give rise to complicated questions, including what do you do with these State law questions that have a Federal ingredient? The Grable inquiry is very challenging. And that will come up all the time in these cases and will make Federal courts decide whether they have jurisdiction under a Grable analysis just to decide whether they're going to apply these very narrow provisions under Section 10 for confirming the award. As opposed to simply looking at the award on its face and saying, the parties are bringing an attempt to confirm a State law arbitration contract before a Federal court. If there's diversity, then maybe it makes sense to have the Federal court there to protect against local bias. But if there's not diversity, there's no reason to say just because the underlying dispute involved a Federal question, which isn't relevant at the confirmation stage, that we should nonetheless have Federal courts spending their time looking at those awards. The Court has no further questions. Justice Thomas? Justice Breyer? Justice Alito? Good. Good. Justice Gorsuch? No further questions. Thank you. Justice Barrett? Thank you, counsel. Thank you. Ms. Black? Thank you, Mr. Chief Justice, and may it please the Court. If Federal courts would have jurisdiction over the parties' underlying dispute, Federal courts can hear motions to confirm or vacate arbitral awards resolving that dispute. First, the FAA's text treats requests to confirm or vacate arbitral awards as motions. Motions are not freestanding lawsuits that need an independent jurisdictional basis. Rather, motions seek relief within a larger controversy between the parties. Courts thus assess their jurisdiction by looking to that underlying controversy. Here, the FAA is structured sequentially to facilitate all stages of arbitration to resolve the same underlying controversy. Because FAA motions are adjuncts to that broader controversy, Federal courts can hear FAA motions when they have jurisdiction over that controversy. Second, Petitioners' approach would decapitate the FAA. The Act pervasively refers to Federal courts. But in Petitioners' world, Federal courts can't hear most Section 9 and 10 motions. They don't on their face raise Federal questions. And most of the motions wouldn't satisfy diversity jurisdiction either, like ubiquitous zero-dollar awards that reject the plaintiff's claim. And uncontested motions to confirm would fail adversarialness under Article 3. Petitioners says State courts are equally good. But unlike the FAA's standards for confirmation and vacature, State courts often revisit the merits under their own State arbitration acts. Congress presumably did not want Federal courts to enforce arbitration agreements at the front end, only to see State courts to force do-overs at the back end. And third, it's implausible the FAA imposes one jurisdictional test for motions under Section 4 and a different jurisdictional test for motions under Sections 5, 7, 9, 10, and 11. And it would encourage needless gamesmanship for jurisdictions under these latter provisions to turn on the happenstance whether there was an earlier Section 4 order. I welcome your questions. Ms. Blatt, would you comment on Petitioner's assessment of your Section 4 venue argument? Sure. I didn't make it up. This Court called it a venue provision in Cortez-Byrd. But here's why we think it's a venue provision. We've got three very solid arguments. First, it reads like a venue provision. It's framed in classic venue terms saying where a petition may be filed. If you look at the title of that provision, it says petition in a court having jurisdiction. So it's not conferring jurisdiction, Justice Thomas. It's talking about jurisdiction that's already there. And second, and this is important historically, this was an expansion, a liberal expansion of venue because at the time venue only was limited to places where the defendant resided. And in the arbitration context, Congress wanted it broader because you wouldn't know necessarily where the arbitration would begin. Now, in the later provisions, the rest of the venue provisions under the Act, you wouldn't need that same broad conferring of venue because you know where the arbitration occurs. And the third reason is just it looks awfully like structurally the Save 4 venue provision under Section 204, which Congress labels a venue provision. And then if we needed a fourth reason, Congress often refers to jurisdictional tests in venue provisions. And we offered the example of the generic venue provision in 1391, which extends – it kind of has this catch-all extending venue to where a court has personal jurisdiction. So it's not completely uncommon. And we also cite two habeas examples. But this Court did call it a venue provision in Cortez-Bird. It said it was a very permissible venue provision. I mean, Vaden obviously calls it a jurisdictional provision about 20 times without using the word Vaden. I mean, I stopped counting when I got to 20. Right. But the important thing is that the opinion twice says Section 4 is not creating jurisdiction. Yeah. But, I mean, that's even – maybe it's a venue provision. I mean, it's possible, I suppose. That seems to me to create a problem for you rather than to get rid of it. I mean, your problem is that you have no textual hook, no textual basis for a look-through rule outside of Section 4. I mean, you have to say that somehow there's a kind of implicit look-through provision in all the rest of the statute so that Section 4 can then become just a venue provision. But you need some kind of jurisdictional hook, don't you? I mean, Congress didn't just expect everybody to understand that this was a look-through jurisdiction. Look-through jurisdiction is very odd. It's very unusual. You would think if Congress wanted to impose a look-through jurisdictional provision throughout the statute, we would have a look-through jurisdictional provision throughout the statute. Sure. And that's why so much of our argument hinges on the fact that the statute is plastered with the words motion and application. When you get a motion for divided argument, you don't go around applying the well-pleaded complaint rule to your motion by the SG's office. You know that there's an underlying jurisdictional basis in the controversy before you. This entire Act refers to the party's controversy. And then it uses the word motion in provision after provision, application. In Sections 9, 10, 12, and 13, it talks about a motion and application. Section 6 says ---- But your argument, then, is just by using the words motion and application, Congress thought that by using the words motion and application, it would be clear to everybody that jurisdiction was by the look-through method. And that's a fair point. And I do think that's why, just as Kavanaugh said when it was passed, that was the understanding that this would be a look-through. It reads like a procedural, a federal, you know, arbitration procedural Act. The federal rules of procedure didn't exist. The whole statute is telling you, you know, how do you get your arbitrator picked, where do you go for discovery disputes, how do you get a judgment at the end of the day. And the judgment at the end of the day is supposed to, under Section 13, be treated as if the case were tried in federal court. So this is a whole fiction in a sui generis situation where, instead of being in a federal court, the Act on its face only talks about federal courts. It's not being adjudicated, this federal controversy. It's being adjudicated before an arbitrator, but it ends up in a judgment. And the other just strong textual hook, besides the words ---- motions are a text, it's a word, and controversy is the word federal. They have no good example for when you can get into federal court. It's basically a nullified Act. You weren't pressing him on his diversity of jurisdiction, but if you have a $0 reward, which just means the defendant wins, you can't get into federal court unless he has to cheat by saying, well, you could look at the underlying controversy in that case because we all know the plaintiff was asking for more money, and so he's got no other way or to get to adversarialness. If you have an uncontested motion to confirm, the only adversarialness is the underlying controversy. Well, if it's ---- but if the plaintiff is seeking $20 million and the defendant wins so that the award is $0, you don't say that $0 is the amount in dispute. You say that whether he's going to win or lose, it's $20 million. In his view, under this well-pleaded complaint, the face of the motion says nothing other than please confirm, and the court under Section 9 has no choice but to confirm. It doesn't look at anything else, especially if there's no contrary motion to vacate. So there's nothing on the face of the motion that mentions how much the plaintiff wanted. It just says, like this case just says on the award's face, all claims are rejected, defendant wins. There's nothing about the amount. To sort of go to the 30,000 feet perspective, the consequence of your position is to federalize a lot more of FAA actions, procedures, than it seems would make sense if you buy the idea that this is a statute that doesn't give generally Federal jurisdiction. And what's wrong with his analogy to settlements? I mean, you have a Federal dispute. It's a Federal case. You're in Federal court. And you say, well, let's settle this. You reach a settlement. It's a contract. If there's a violation of that settlement, you don't go back to Federal court. It's a State contract matter. You go to State court. Why isn't that just like what he's talking about here? Well, it's absolutely correct that Kekkonen, and I hope I'm pronouncing that correctly, says if parties settle and there's litigation over that settlement, but the court has already dismissed the case, collateral litigation over that settlement has to go to State court. And the reasoning behind that is because there's been a case-ending dismissal by the Federal court. And at that point, the Federal court loses jurisdiction. Here, the analogy would not be the arbitral award. It would be the court order under Section 9 and 10 and 13 confirming the case and dismissing it. So if that's the right analogy, we still have a live controversy at the time there's a motion to confirm the award. And they really don't want to bring that settlement analogy anyway, because in that sense, everything leading up into the award would be part and parcel of a live Federal controversy. But in terms of your first question about are we Federalizing cases, I mean, this is the majority rule, although there's circuits that have gone the other way. And the only cases that we're talking about are going to Federal court or Federal question jurisdiction and diversity jurisdiction, with the option of being no cases going to Federal court, and you have Congress passing a very odd act. And if I could just get into this bit about this being jurisdictional. So he's got two arguments. And I agree, Justice Kagan. I mean, Vaden, I just don't think the court had before it, even though it was mentioned at oral argument and mentioned in the briefing. The court didn't have the situation about what we're going to do about the rest of the act. Is there going to be a look-through? But the court did twice say Section 4 is not jurisdictional. But the problem the other side has is they really don't want to live with the text, because if Section 4 is jurisdictional, they lose this case. And that's because no one could read that save for clause as an isolated grant of jurisdiction. It would only be jurisdictional because it's a carve-out written in words of limitation. In other words, if Section 4 has jurisdiction, it's only because it's taking away jurisdiction that we be conferred by the first section of that act. And this is a little bit of what the Chamber of Commerce was arguing in their brief. But that is to say the first question just says go file in any court without regard, put any motion in Federal court, but then it takes away and says, but only if you have jurisdiction. So in that sense, you've got a limiting clause. Well, the only logical inference then is if that limiting clause is omitted from the rest of the sections, the rest of the act is broader. But I took that to not be your position. It's not our position. That is the consequence. If he wants to live by the text, he needs to die by the text, and he doesn't want to do that. Our position is that you have the common-sense approach of what Congress was trying to actually accomplish with this act. And you have plenty of textual hooks because you've got the word motion, and it's an adjunct. And courts every day understand that motions aren't, you know, motions don't need a free stand. And we gave Federal Rule 27, but I know another very familiar example to you will be the search warrant. When courts go to Federal court for a search warrant, that is because a court underlying has jurisdiction over offenses against the United States. So it's an adjunct to a broader controversy. And that's just the way motions function, is that they aren't freestanding lawsuits. The Federal rules are very specific between motions and complaints. Complaints invoke a court's jurisdiction. They are a cause of action. A motion is just an adjunct. But it doesn't say the application is a motion. It says it will be heard as a motion. Correct. Well, but I mean, you seem to be saying that treating them as calling them motions. I think they are still a separate animal as opposed to the motion itself. When you look at the act, sort of, you know, unitary, harmonious, interlocking, it is the ‑‑ they are motions bringing that are all adjuncts to a controversy. I mean, this is the Federal Arbitration Act. So they were obviously thinking about cases that could otherwise be litigated in Federal court. Whether that's just diversity or Federal question. These are Federal question, Federal controversies. And these are treated as applications or requests to facilitate the arbitration from cradle to grave. Well, but it is the Federal Arbitration Act. But it's an odd creature in that unlike most other Federal statutes, it doesn't by itself give rise to jurisdiction. And it seems to me that one reason that ‑‑ why that is, is because they arbitrate all sorts of disputes and they didn't want all the 380,000 whatever cases being brought in Federal court. Just like you don't want the settlement agreements, the enforcement of that being brought in Federal court just because it arose out of a Federal case. Agreed. But there's no question under the other side's view, everybody and anybody can go to section ‑‑ under section 4 as long as there's a Federal controversy and sort of get the hook of the Federal court jurisdiction. And even if it's frivolous, the court could deny the motion because the parties are already arbitrating but retain jurisdiction. So I don't see how we're bringing any more cases. The only cases that can be brought under 5, 7, 9 and 11 under our view are the same cases where the Federal court has authority under section 4 to compel arbitration in the first place. And that just was the contemporaneous understanding of the act when it was passed. Also we think that's what the court understood in Marine transit, which was ‑‑ I don't know, it's a few years after the passage of the act. The court seemed to suggest, look, if a court has power to order the arbitration, it should ‑‑ it's kind of ‑‑ it's too silly to even talk about. They have authority to enter the award at the end of the day. And it is an odd ‑‑ as you said, it's an odd act, but it's even odder if you ‑‑ if you reverse. And I don't know what this is. It's a dead act. I guess ‑‑ I don't know what Congress was doing. If even diversity jurisdiction, you're going to have to look at the controversy. Counsel, what do we do with section 8? The admiralty provision? The admiralty provision that has the saving language is superfluous. That's the one thing that gives me pause with your argument. It's logical what you're saying, that we treat this like a motion, and in a motion you look at the underlying controversy. That's very logical. But why put it in section 8 and not in 9 or 10? Yeah, so section 8, again, I think the save for clause is not in the rest of the sections because the venue is much narrower. But the ‑‑ under section 8, I think it is a peculiarity of admiralty jurisdiction. So it says that you can proceed by libel and seizure of the vessel. And libel is a complaint. And so if you did not have the, and then the court shall have jurisdiction and retain jurisdiction, if that language was just excised, the provision would read as follows. You can go file a libel complaint in admiralty and seizure ship, period. And then I think it would be sort of raise a lot of questions about, well, what does that mean now? I filed a complaint in federal court. What do I do about arbitration? And so that language, I think it's even less superfluous than the save for language. It's making clear that you have every right to proceed throughout the arbitral process and invoke the FAA. And at the same time, you can actually go to court and file your federal complaint. And you wouldn't do that in a civil case, obviously, if you've agreed to arbitrate. You're not filing a complaint in federal court. You're going just straight to arbitration. Thank you. And the only other thing I wanted to say is on the, I think the other side is trying to say, well, maybe it's not a jurisdictional grant. It's just an instruction on how to use your jurisdiction. And I think that's. I'm sorry. What's it? It. Oh, sorry. I've lost my train of thought. The petitioner says there are two ways for him to win. One is that section four is a freestanding jurisdictional grant, contrary to what this court has said in three separate Supreme Court cases. So he then has a fallback argument saying it's not a jurisdictional grant. It's just in section four. The save for clause is just an instruction. Hey, federal courts, I'm not giving you jurisdiction. I'm just telling you here's how you might look at seeing if you have jurisdiction. And I think that's just a fancy way of saying it's a jurisdictional provision because without that language, the court, in other words, if it didn't look through, it wouldn't have jurisdiction. So I'm just saying I think it's word games. Ms. Mott, I mean, this might just be repeating my last question, but there's a set of arguments one can make on both sides about what would make for a sensible act. So if we were writing the act from scratch, how we would write it to do the things we wanted to do and not do the things we don't want it to do. But I just want to put those arguments aside and say that we're trying to make sense out of the actual language that Congress offered. And then it seems as though there are two different positions. And one position is we just sort of, by the word motion and then by something, we just sort of, like, get that Congress meant for there to be look-through jurisdiction. And the other, which is Mr. Geiser's, is, you know what, we have look-through provision where Congress says there's look-through provision, whatever you want to call it, jurisdiction, venue, anything else in between. There are particular places where Congress makes clear look-through, the look-through method is the right one, and where those things don't exist, it's not the right one, because we can't just sort of make up look-through jurisdiction out of nothing. Yeah, and I think that's fair to say, what do I do if the other side tries to make a compelling textual argument? And I think you've got to ask yourself, A, how compelling is it? And, B, are there other texts in the statute that are telling me he's crazy? And I think you have that here, because you just look at the Act and you get to look at things like structure, context, purpose, and other textual cues throughout the Act, including the title of Section 4 itself and the fact that it's written in classic venue-framing terms, and your precedents, which all say Section 4 is not jurisdictional, starting in Southland and then in Moses Cone. So I just think it over-assumes that there is a compelling textual argument in the first place when it's not, because as a logical matter, his textual argument takes him a place that no party wants to go, which is that everything ends in federal court. I'm not saying it's an easy case for you. I'm saying our case is better than his case. You said the idea that our precedent precludes his case. It seems like the Moses Cone kind of precedent, which is that the FAA doesn't do anything with respect to jurisdiction, is equally a problem for you. Both of you are doing something with respect to federal jurisdiction. You're doing it by way of a default rule. He's doing it by way of a selective Section 4, Section 8 rule. Yeah, that's a fair point. So if we just look at this Act, and I think why it got in footnotes in your precedent is because the court looked at this very quickly and said, wait a minute, this is not a jurisdictional act. They cited Section 4 as the example. And I think this is what gets into the professor's amicus brief, that this was based on the New York Arbitration Act. And if you just pass the New York Arbitration Act, this whole act would read like one big, giant jurisdictional grant. And, again, I hate to do what this court did, but this court said, hey, wait a minute, you see that Section 4 and it says the court already has jurisdiction or must have it? That's reflective of this can't be a jurisdictional grant. So, yeah, I'm using your precedent, but I think your president very quickly looked at the Act and said it made a choice that this can't be what Congress intended. And it is what the drafter said he was doing. I mean, sure, it's legislative history, but it is the 1925 contemporaneous understanding by the ABA, too. And it doesn't mention Section 4. It says how we're going to enforce arbitration agreements is going to be through this look-through approach. And just in terms of textually, if you just start with Section 2, which you said is the cornerstone, I mean, that's what, to me, answered the case for me, is that Congress thought we're going to have a whole substitute for a federal controversy not to be litigated in federal court. We're going to take it out of the, you know, not in front of a jury, but it left the federal court in at every stage to get, to help to facilitate it. And so that's why there's not, you know, a freestanding jurisdictional grant in the case. That's the best I got. Okay. Justice Thomas. Justice Gorsuch. All set here. Thank you, Chief. Okay. Thank you, Counsel. A rebuttal, Mr. Geiser. Thank you, Your Honor. A few quick points. First, starting with the venue argument. My friend said that Cortes-Byrd called Section 4 a venue provision. That's simply false. Cortes-Byrd mentioned Section 4 when they were comparing the terms may and shall. And they were looking for examples in the Federal Arbitration Act that used the permissive term may versus the mandatory term shall. It specifically did not refer to Section 4 when it was listing other venue provisions in the Act. And my friend has still not cited a single case. If the Court says that the look-through clause is now a venue provision, it will literally be the first court in the nation that has said that. I think that would be fairly striking. My friend said that our reading will decapitate the Federal Arbitration Act. I think that's odd because our reading is, in fact, the reading that was the overwhelming majority view in the country for a quarter of a century. The only courts that have started questioning whether our reading is correct is in light of this Court's opinion in Vaden. And only because they said not because of any textual reason, they admitted their approach is profoundly atextual. They said as a policy matter, it seems to make sense that if the look-through approach applies at the start, it should probably apply at the finish. That is not the way that this Court construes statutes, and it's a senseless reading of the statute itself. Again, Congress did not frame this as a continuum. These are independent, freestanding filings. My friend says that these are simply motions. Now, the Chief Justice is exactly correct. Section 6 does not say that these applications and petitions are motions. It says they shall be handled like motions. And as the Court said in Hall Street, that's simply to streamline the proceeding. And Hall Street said in the next words it used I think underscores our point. It said it streamlines the proceedings so that the party doesn't have to file a separate contract action. It's making clear that it's an independent way to get a specific performance request to enforce an arbitration contract before the Court. And to the extent that my friend says that this is a motion as an adjunct to this missing underlying case, my friend is exactly right that typically when you have a jurisdictional anchor, you have an actual Federal case in an actual Federal court, the Court doesn't say do I have jurisdiction over every subsequent motion, but you need the initial Federal case. I'm not aware of any precedent that this Court's – in this Court's jurisprudence that says you can pretend there's a case in court that's not the way it works with ancillary jurisdiction, as the Court made clear in Peacock v. Thomas. It's not the way it works with settlements. A settlement is certainly adjunct to the underlying Federal case. But if a party settles a Federal claim and then shows up in the Court with a dispute about the settlement, they certainly can't say, well, this is a motion that's adjunct to our missing Federal case. Please assert jurisdiction. Kekkonen squarely rejects that position. I think this Court would have to overturn Kekkonen to accept my friend's version of it. Marine transit does not support, my friend. It was expressly premised on Section 8. The Court couldn't have been clearer in multiple points in the opinion of saying that the district court entered jurisdiction in confirming the award under the authority granted in Section 8, which shows, again, that Section 8 is not superfluous. In fact, it has a very clear meaning. And when Congress intended to have courts retain jurisdiction, they said so. They did that in Section 8. They did not put the look-through approach in any other section of the Act. And I do think that if we do adopt, if the Court does adopt my friend's approach, you are certainly departing from the majority view and you're expanding Federal jurisdiction to decide a bunch of cases that where there is no advantage to having a Federal court spend its expertise and bandwidth looking at cases that the State courts have faithfully handled and enforced for a quarter of a century. I think the most striking thing here is not only has the sky not fallen, my friend and her very able amici could not identify a single systemic study or empirical analysis suggesting that this has presented a single problem for any arbitration agreements by leaving the enforcement of the Act in large part to State court, which is what this Court has said for multiple occasions is what Congress intended. Thank you, counsel. The case is submitted. Thank you.